Jake D. Finkel, Esq. (SBN 293954)
jake@finkelfirm.com
Avraham Kalaf, Esq. (SBN 325249)
avi@finkelfirm.com
Eugene Feldman, Esq. (SBN 118497)
gene@finkelfirm.com
**THE FINKEL FIRM**
3470 Wilshire Blvd., Suite 830
Los Angeles, CA 90010
Tel: (213) 787-7411
Fax: (323) 916-0521

Attorneys for Plaintiff
ADAM FOX

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM FOX,<br><br>Plaintiff,<br><br>vs.<br><br>HARRY WINSTON, INC.; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No: 8:22-cv-00381-DOC (ADS)<br><br>**PLAINTIFF ADAM FOX'S MEMORANDUM OF POINT AND AUTHORITIES IN OPPOSITION TO DEFENDANT HARRY WINSTON INC.S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**<br><br>DATE: FEBRUARY 27, 2023<br>TIME: 8:30 A.M.<br>CTRM.: 9D<br>JUDGE: HON. DAVID O. CARTER |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**

# TABLE OF CONTENTS

1. INTRODUCTION ...................................................................................................1

2. STATEMENT OF RELEVANT FACTS ..............................................................2

   A. "The Sale" ........................................................................................................2

   B. Plaintiff Suspects Cici Zhang Offered "Kickbacks" to the Client to Secure the Sale. 4

   C. HWI Terminates Plaintiff ................................................................................4

3. ARGUMENT ..........................................................................................................5

   A. Summary Judgment of Plaintiffs Cause of Action for Violation of California Labor Code 1102.5 is Unwarranted. ...................................................................6

     i. There remain genuine issues of dispute regarding whether Plaintiff engaged in protected activity. ..........................................................................................6

     ii. There remains a genuine dispute as to whether Plaintiff's protected activity was a contributing factor in his termination. ...............................................9

   B. Summary Judgment of Plaintiff's Cause of Action for Wrongful Termination in Violation of Public Policy is Unwarranted. ..................................................12

4. CONCLUSION ....................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)..................................5, 6

*Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).............................................................6

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)......................................................5

*Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)..................................10

*Erhart v. Bofl Holding, Inc.*, No. 15-CV-02287-BAS-NLS, 2020 WL 1550207, at *29 (S.D. Cal. Mar. 31, 2020)..............................................................................7

*Feretti v. Pfizer Inc.*, No. 11cv4486, 2013 WL 140088, at *10 (N.D. Cal. June 6, 2016)....10

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010) ..............................................................................5

*Green v. Ralee Engineering Co*, 960 P.2d 1046, 1059 (Cal. 1998) ..........................6

*Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) ...............6

*Jones v. Williams*, 791 F.3d 1023, 1030 (9th Cir. 2015)..............................................5

*Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988).................................................10

*Killgore v. Specpro Prof'l Servs.*, 51 F.4th 973 (9th Cir. 2022) ...............................6

*Lawson v. PPG Architectural Finishes, Inc.*, 503 P.3d 659, 718 (2002) .........11, 12

*Mokler v. Cnty of Orange*, 68 Cal. Rptr. 3d 568, 580 (Ct. App. 2007).................6

*Patten v. Grant Joint Union High Sch. Dist.*, 37 Cal. Rptr. 3d 113, 117 (Ct. App. 2005).......6

*Scott v. Harris*, 550 U.S. 372, 378 (2007)........................................................................6

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)....5

*Terry v. Atl. Richfield Co.*, 140 Cal. Rptr. 510, 512 (1977) ......................................6

*Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)...................................10

**Statutes**

Cal. Labor Code § 1102.5(b)................................................................................7, 12

Fed. R. Civ. P. 56(a) .............................................................................................................5

Fed. R. Civ. P. 56(e) .............................................................................................................6

Lab. Code, § 1102.6 ..........................................................................................................10

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**

## MEMORANDUM OF POINTS AND AUTHORITIES

**1.      INTRODUCTION**

Plaintiff ADAM FOX ("Plaintiff") was hired on, or around, June 25, 2021, by Defendant HARRY WINSTON, INC. ("HWI"), a luxury retail jeweler with stores across the United States. Plaintiff's primary role was to support then Vice President of U.S. Retail, Michael Moser, by overseeing the operations at HWI's 8 West Coast locations. During his brief tenure with HWI, Plaintiff encountered and observed a series of transactions for which he had a reasonable suspicion violated certain federal and state finance laws. Plaintiff reported these suspicions to HWI's Global Vice President of Sales, Fadi Ghalayini. Four days later, HWI terminated Plaintiff's employment, despite never complaining about his job performance.

Plaintiff thereafter brought this action alleging causes of action for Violation of California Labor Code, 1102.5 (whistleblower retaliation), Wrongful Termination in Violation of Public Policy, Negligent Supervision, Breach of Contract, and Intentional Infliction of Emotional Distress ("IIED"). HWI now moved for summary judgment or, in the alternative, partial summary judgment as to all of Plaintiff's causes of action, as well as Plaintiff's claims for punitive damages.

Plaintiff does not herein contest Defendant's motion as to his causes of action for Negligent Supervision, Breach of Contract, IIED, and the punitive damages claim. Partial Summary Judgment is, however, inappropriate as to Plaintiff's causes of action for Retaliation and Wrongful Termination, as genuine issues of dispute remain regarding:

- Whether Plaintiff engaged in a protected activity when he reported a suspicious transaction implicating possible violations of both state and federal law; and,
- Whether there is a sufficient causal nexus between Plaintiff's protected activity and his subsequent termination.

///

Accordingly, HWI cannot meet its burden as to two of Plaintiff's causes of action and Summary Judgment of Plaintiff's causes of action for retaliation in violation of California Labor Code 1102.5 and wrongful termination in violation of public policy should be denied.

## 2. STATEMENT OF RELEVANT FACTS

Plaintiff began his employment at HWI on July 21, 2021, as HWI's U.S. Retail Support Manager for the West Coast. UF 15, 16. In this role, his primary duty was the support HWI's Vice President of U.S. Retail, Michael Moser, by overseeing the operations at HWI's eight West Coast locations. UF 2, 14, 16, 71. Upon his hiring, Plaintiff was provided HWI's Code of Ethics, which incorporated HWI's whistleblower protection policies. UF 70. HWI had no complaints about Plaintiff's job performance during the time he worked for HWI. UF 72.

### A. "The Sale"

Central to the issues in this case is a single transaction between two stores Plaintiff oversaw in his capacity as the U.S. Retail Support Manager: the Bellagio salon, located in Las Vegas, Nevada; and the South Coast Plaza ("SCP") salon, located in Costa Mesa, California. 73.

On September 15, 2021, a client ("the Client") placed a deposit with HWI's Bellagio Hotel location for an engagement ring at an agreed sales price of $153,000. UF 73. To secure the purchase, the Client paid a total deposit of $43,980; paying $9,980 in cash and $34,000 on his credit card. UF 74. The initial receipt from this transaction indicated that the item would be shipped to an address in Las Vegas, Nevada, but that no state sales tax would be charged. UF 75. This was apparent to Plaintiff on November 4, 2022, when he was copied on an e-mail attaching this sales receipt. UF 76.

One month later, on October 15, 2021, the Client phoned Cici Zhang ("Cici"), the sales executive at the Bellagio salon, telling her that he got a better deal on the ring at the SCP location. UF 77. After three days on inquiry, the manager of the Bellagio salon, Lilly Zhang ("Lilly"), wrote an e-mail to Moser informing him of the sale and alerting Moser that the Client paid the deposit in cash by having 3 of his family members each

engage in cash transactions of approximately $9,000. UF 78. Lilly further opened that the cash transactions raised alarms and suspicions that the Client "could be engaging in money laundering." UF 79. Plaintiff was copied on this October 18, 2021, e-mail. UF 78.

Despite a total of $38,780 in cash being deposited for this single transaction, HWI never asked the Client to fill out, and never filed, an IRS Form 8300, which is required for any transaction over $10,000 in cash. UF 80. HWI admits that structuring multiple payments under the $10,000 cap to avoid filing a Form 8300 is illegal[1]. UF 81. Robert Scott, HWI's Chief Financial Officer, acknowledged that the SCP sales executive should have filed a Form 8300 when the client made the three cash transactions. UF 82. Further, HWI admits that Form 8300 should have been filed within 15 days of October 18, 2021, the date the transaction was recorded; or on November 3, 2021. UF 83.

However, HWI now erroneously claims that no Form 8300 was required to be filed because the cash, or a portion thereof, was returned to the client. UF 84. Indeed, on, or around, November 11, 2021, Robert Scott instructed Lilly Zhang to refund the Client's cash deposits and allow him to charge the remainder on his credit card. UF 85. The following day Lilly Zhang confirmed that the Client would be refunded $28,781 of the $38,780, with HWI holding back exactly $9,999 of the cash the Client put towards the deposit on the ring; exactly $1 less than would be required to file a Form 8300. UF 86. That same day, and two days after Plaintiff reported this suspicious activity, HWI's Global Vice President of Sales, Fadi Ghalayini ("Ghalayini"), followed up on the completion of the Sale, and asked for confirmation that "issue with the forms requested is sorted out." UF 87. Coincidentally, this language mirrored the language of Plaintiff's concerns with the transaction that he reported to Ghalayini in his November 11, 2021, e-mail memorializing the November 10, 2021 phone conversation between Plaintiff and Ghalayini. Both Scott and Plaintiff understood Ghalayini to be referring to HWI's failure to file the IRS Form 8300. UF 88, 89.

---

[1] Plaintiff requests the Court, pursuant to Federal Rule of Evidence 201, take judicial notice of the regulations governing IRS 8300, located at https://www.irs.gov/businesses/small-businesses-self-employed/irs-form-8300-reference-guide,

3

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**

Nevertheless, the result of the transaction was that the Client deposited $38,780 in unaccounted-for cash into the banking system through a series of transactions with HWI that fell just below the threshold to file a Form 8300. HWI then returned the money to the Client through the banking system, ultimately obscuring the origins of the cash; a classic case of money laundering.

### B. Plaintiff Suspects Cici Zhang Offered "Kickbacks" to the Client to Secure the Sale.

In addition to suspected money laundering and violations of IRS reporting requirements, Plaintiff also suspected that Cici Zhang was engaging in retail bribery by offering customers "kickbacks" as additional incentive to purchase jewelry for her. Prior to the sale, Lilly Zhang, with the knowledge and support of Moser, reprimanded Cici for giving expensive gifts to her clients. UF 90. At the time, Plaintiff was already assisting Moser with an investigation of Cici's violations of HWI policies and possible legal violations. UF 93. In addition, Plaintiff was copied on an e-mail from Audrey MacKenzie, the manager of the SCP salon, informing Lilly Zhang that the Client had stated that Cici offered him a 1% kickback on the sale, sent to his Venmo account, if he made the sale with her. UF 92. Prior to this e-mail, Plaintiff was already privy to gossip and allegations that Cici was offering kickbacks. UF 91. These facts, as well as his subsequent conversations with Audrey MacKenzie, helped Plaintiff form his belief that the Sale was suspicious; beliefs he later conveyed to Ghalayini. UF 94.

### C. HWI Terminates Plaintiff

On November 5, 2021, Michael Moser was placed on administrative leave pending the outcome of an investigation into complaints lodged against him by Lilly Zhang. UF 23-26. At the time the decision to place Moser on leave was made, the investigation had not concluded and there was no determination whether or not Moser would be terminated. UF 28 (response), 29 (response). HWI contends that, in the same conversation, Ghalayini, Mastacciuola, and Scott, decided, that, if Moser was terminated, then they would likely eliminate Plaintiff's position. *Id.* However, in a subsequent conversation with Plaintiff that same day, HWI's head of HR, Mastacciuola, told Plaintiff that he was needed "now more

than ever," and that Plaintiff was now the "point man" for the West Coast Stores. UF 27 (response). Mastacciuola further told Plaintiff that he was relying on Plaintiff to keep the business moving as it was headed into the busy Christmas season. UF 96.

A week later, on November 12, 2021, HWI terminated Moser. The following Monday, November 15, 2021, Mastacciuola informed Plaintiff that Plaintiff's position had been eliminated. When Plaintiff inquired as to why he was not told sooner when Moser was fired, Mastacciuola replied "I didn't know." UF 27 (response).

## 3. ARGUMENT

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fortune Dynamic*, *supra*, 618 F.3d at 1031; accord *Anderson*, *supra*, 477 U.S. at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, *supra*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case that the nonmoving party bears the burden of proving at trial. *Id.* at 322–23; *Jones v. Williams*, 791 F.3d 1023, 1030 (9th Cir. 2015). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Serv.*, *supra*, 809 F.2d at 630 (quoting former Fed. R. Civ. P.

5

56(e)); accord *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). To carry this burden, the non-moving party "may not rest upon mere allegation or denials of his pleadings." *Anderson*, *supra*, 477 U.S. at 256; see also *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings."). Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." *Anderson*, *supra*, 477 U.S. at 256.

When ruling on a summary judgment motion, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court should not weigh the evidence or make credibility determinations. See *Anderson*, *supra*, 477 U.S. at 255.

### A. Summary Judgment of Plaintiffs Cause of Action for Violation of California Labor Code 1102.5 is Unwarranted.

To establish a prima facie case of retaliation, a plaintiff must demonstrate (1) he is engaged in a protected activity, (2) his employer subjected him to an adverse employment action and (3) there is a causal link between the protected activity and the adverse employment action. *Patten v. Grant Joint Union High Sch. Dist.*, 37 Cal. Rptr. 3d 113, 117 (Ct. App. 2005).

#### i. There remain genuine issues of dispute regarding whether Plaintiff engaged in protected activity.

"An employee engages in protected activity when she discloses . . . 'reasonably based suspicions' of illegal activity." *Mokler v. Cnty of Orange*, 68 Cal. Rptr. 3d 568, 580 (Ct. App. 2007). To establish a reasonably based suspicion of illegal activity, "an employee need not prove an actual violation of law." *Green v. Ralee Engineering Co*, 960 P.2d 1046, 1059 (Cal. 1998). The reasonableness of the plaintiff's beliefs is an issue best left for a jury. *Killgore v. Specpro Prof'l Servs.*, 51 F.4th 973 (9th Cir. 2022) (*citing Terry v. Atl. Richfield Co.*, 140 Cal. Rptr. 510, 512 (1977) ("[T]he reasonableness of an act or omission is a question of fact, that is, an issue which should be decided by a jury and not on a summary judgment motion," unless "there is no room for a reasonable difference of opinion.")

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**

To constitute a protected activity pursuant to section 1102.5, a disclosure must be "to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance." Cal. Labor Code § 1102.5(b).

HWI here fails to meet its burden to extinguish all genuine material disputes regarding whether Plaintiff engaged in protected activity when he reported his reasonable suspicions that HWI's conduct regarding the Sale violated state and federal law. HWI argues that Plaintiff did not engage in protected activity because he did not perform any investigation into the Sale through which he could form a reasonable suspicion that any state or federal laws were violated. This is unfounded.

Initially, it is undisputed that, on November 10, 2021, Plaintiff informed Ghalayini that he had 4 concerns of violations regarding the sale; 3 of which violated state or federal law: that HWI failed to properly report the cash transactions to the IRS; that Cici Zhang offered the client a kick back related to the sale; and that HWI helped facilitate evasion of sales tax by shipping the purchase to an unknown address in Alaska. Notably, Plaintiff was not then, and is not now, required to prove any of these allegations as true. He only needs a reasonable suspicion of wrongdoing.

Defendant's proposition requiring Plaintiff to conduct his own investigation prior to making the report is misguided. Initially, it's bad public policy. Labor Code, section 1102.5 requires that the disclosure be made to either the person with authority over the offending employee, or to a person who has *authority to investigate* claims. Defendant's standard renders this statute redundant, as there is no need to report to a person with authority to investigate if the whistleblower has already conducted the investigation. Even more, Defendant's standards shift the burden onto employees to conduct investigations that the employer should be responsible for investigating.

Further, Defendant's reliance on *Erhart v. Bofl Holding, Inc.*, No. 15-CV-02287-BAS-NLS, 2020 WL 1550207, at *29 (S.D. Cal. Mar. 31, 2020) is inapposite. In *Erhart*, the Plaintiff suspected that the employer was engaging in falsification of financial documents *solely* on the fact that, during a company meeting, some participants were giving "awkward

looks". He never inquired about the company's financial documents and could not point to a single suspicious or erroneous item in any financial statement. The issues here are far different.

First, regarding Plaintiff's suspicions that HWI engaged in sales tax evasion, Plaintiff had sufficient evidence to form a reasonable suspicion. Plaintiff had already formed a belief that HWI was skirting sales tax based on the number of customers who were shipping goods to states with sparse populations that did not collect sales tax, such as Utah, Idaho, and, in this instance, Alaska. UF 95. In addition, Plaintiff was copied on a November 4, 2021, e-mail from Lilly Zhang attaching a sales invoice related to the Sale that indicated a shipping address to a location in Las Vegas, Nevada, but also showing that no sales tax would be collected. UF 76. This was a sufficient red flag for Plaintiff to believe that something may be untoward. Finally, Plaintiff was privy to discussions with Audrey MacKenzie, including an e-mail written from Audrey to Lilly Zhang on November 11, 2021, informing Lilly that the Client alleged the Bellagio salon offered to ship and empty box for him so he could avoid sales taxes. UF 92. A reasonable juror could determine that any one of these instances, and, even more, all three combined, was sufficient to give Plaintiff a reasonable suspicion that HWI was assisting its clients with avoiding sales tax.

Second, Plaintiff's report that Cici Zhang was engaging in illegal retail bribery by offering to provide the client a kickback of 1% to his Venmo account is also founded on sufficient evidence to give rise to a reasonable suspicion of misconduct. Cici Zhang had previously been reprimanded for providing gifts to clients. UF 90. There was also gossip and rumors that Cici regularly engaged in such practices. UF 91. Notably, Plaintiff was uniquely situated to observe these claims, as he was assisting Moser with an investigation into various violations of HWI policy by Cici. UF 93. Finally, like above, Plaintiff was privy to the allegations the Client made that Cici had promised him a kickback. These came from his conversations with Audrey MacKenzie, as well as MacKenzie's e-mail on November 11, 2021, informing Lilly of the Client's allegation. UF 92, 94.

///

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES

Third, there was ample evidence available to Plaintiff to allow him to form a reasonable suspicion that HWI violated IRS reporting requirements and even possibly assisted in laundering money for the client. Plaintiff was copied on the October 18, 2021, e-mail from Lilly wherein she expressed her concerns that the Client's use of family members to do multiple cash transactions of approximately $9,000 each to "help out the client." UF 78, 79. He was also privy to information from Audrey MacKenzie regarding this structured transaction; a transaction that Robert Scott admitted should have been reported to the IRS. UF 82. Further, Plaintiff, like all employees with HWI, was trained on the requirements for IRS Form 8300 reporting. He was privy to documents showing that there were transactions made in cash that were just below the $10,000 reporting requirements. Finally, at the time Plaintiff reported his suspicion to Ghalayini, the Form 8300 still had not been reported, it had been more than 15 days since the transaction was complete, and no cash had been refunded; which was the ultimate reason, albeit erroneous, that Robert Scott provided to justify why the Form 8300 was not filed or required to be filed.

A reasonable fact-finder could determine that these facts, all known to Plaintiff at the time he reported the suspicious transaction, were sufficient to give Plaintiff reasonable suspicion that something was amiss with the transaction. Indeed, in this instance, there *was*, at minimum, a violation of federal law. Accordingly, a genuine dispute exists as to whether Plaintiff engaged in protected activity when he raised these suspicions with Ghalayini, a person who had direct authority over Plaintiff at the time and a person who had authority to investigate the claims.

    **ii. There remains a genuine dispute as to whether Plaintiff's protected activity was a contributing factor in his termination.**

Defendant next argues that Plaintiff's reporting this suspicious activity was not a contributing factor in HWI's decision to terminate Plaintiff because 1) the decision to eliminate Plaintiff's position was made prior to Plaintiff's report, and 2) there was a legitimate business reason for the termination that HWI would have eliminated Plaintiff's position even if he would not have made the report.

"The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.'" *Id*. (quoting *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988)). "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." *Id*. (quoting *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)); see also *Feretti v. Pfizer Inc.*, No. 11cv4486, 2013 WL 140088, at *10 (N.D. Cal. June 6, 2016) ("Thus, Plaintiff may establish causation by showing that: (1) one of the decision makers responsible for each of the adverse employment actions taken against Plaintiff had knowledge that Plaintiff had engaged in protected activity, and (2) there is a close proximity in time between the protected activity and the adverse employment action.") "The requisite degree of proof necessary to establish a prima facie case . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

Labor Code, section 1102.6 is part of the same statutory scheme. It provides that once an employee-whistleblower establishes by a preponderance of the evidence that retaliation was a contributing factor in the employee's termination, demotion, or other adverse action, the employer bears the burden of demonstrating by clear and convincing evidence that it would have taken the same action for legitimate, independent reasons. Lab. Code, § 1102.6. Section 1102.6, adopted in 2003, provides the governing framework for analyzing whistleblower retaliation claims brought under Labor Code, section 1102.5. It "places the burden on the plaintiff to establish, by a preponderance of the evidence, that retaliation for an employee's protected activities was a contributing factor in a contested employment action. *The plaintiff need not satisfy McDonnell Douglas in order to discharge this burden*. Once the plaintiff has made the required showing, the burden shifts to the employer to demonstrate, *by clear and convincing evidence*, that it would have taken the action in question for legitimate, independent reasons even had the plaintiff not engaged in

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**

protected activity." *Lawson v. PPG Architectural Finishes, Inc.*, 503 P.3d 659, 718 (2002), italics added.)

First, it is undisputed that Ghalyini, the person to whom Plaintiff reported the possibly illegal activity, was also involved in the decision to eliminate Plaintiff's position. UF 28, 29. Second, the report of suspicious activity, made on November 10, 2021, and subsequently memorialized in an e-mail on November 11, 2021, occurred just 4 days before Plaintiff was terminated. Thus, there is a clear temporal proximity between Plaintiff's report and his termination. Thus, the preponderance of the evidence is sufficient for a reasonable juror to determine infer that the report was, at minimum, a contributing factor in Plaintiff's termination.

Third, there is a genuine dispute as to whether HWI actually decided to terminate Plaintiff on November 5, 2021. It did not. On November 5, 2021, Ghalyini, Mastacciuola, and Scott, conversed over the phone and decided to place Moser on administrative leave. UF 27-29. They did not, however, determine at that time that Moser should be terminated. That decision was not made until November 12, 2021; after Plaintiff made his report to Ghalayini. *Id*. Thus, at best, the three officers discussed a contingency whereby they would eliminate the position if and when Moser was fired, but no final decision was ever made. Further, there are no documents or e-mails in the 10 days between November 5, 2021, when this decision was purportedly made, and November 15, 2021, when Plaintiff was terminated, memorializing or even discussing this plan.

However, there *is* testimony that disputes these self-serving statements. On November 5, 2021, the day that the purported contingency to eliminate Plaintiff's position was made, Mastacciuola contacted Plaintiff and informed him that HWI "needed him more than ever," and that Plaintiff was the "point person" for the West Coast. UF 28, 29. Then, on November 15, 2021, when Plaintiff asked Mastacciuola why he was not notified of his termination sooner, Mastacciuola replied that, "[he] didn't know." *Id*.

///
///

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES

      This disputed evidence is sufficient to shift the burden to Defendant to demonstrate, *by clear and convincing evidence*, that it had a legitimate, independent reason to terminate Plaintiff even had Plaintiff not engaged in protected activity. *Lawson v. PPG Architectural Finishes, Inc.*, 503 P.3d 659, 718 (2002). Defendant argues that HWI did not believe Plaintiff's position was necessary when he was hired, but, rather, it was a position created at Moser's insistence to support Moser. HWI further argues that it was able to redistribute Plaintiff's job duties to two other employees and that it has not filled the position since. Yet, in the face of disputed evidence, these facts hardly rise to the "clear and convincing" evidence required for Defendant to meet its burden.

      First, Mastacciuola's comments after Moser was placed on leave that HWI needs Plaintiff "now more than ever," and that Plaintiff was now the "point man" for the West Coast undercut Defendant's claims that the position was not needed. Even more, Mastacciuola testifies that, on November 5, 2021, his primary motivation for speaking to Plaintiff and telling Plaintiff that h was needed "now more than ever" was to ensure business continuity and maintain smooth operations as HWI headed into the busy Christmas season. UF 96. These statements indicate HWI's reliance on Plaintiff's position; especially in the near-term after Moser's termination. Importantly, they undercut the legitimacy of Defendant's claims that the position was not necessary and, therefore, they would have eliminated it even had Plaintiff not reported the suspicious activity. Indeed, in the face of these facts, the evidence upon which Defendant relies does not rise to the "clear and convincing" standard required for Defendant to meet its burden. Accordingly, summary judgment of this cause of action is improper.

      **B.**      **Summary Judgment of Plaintiff's Cause of Action for Wrongful Termination in Violation of Public Policy is Unwarranted.**

      As Plaintiff's wrongful termination claim is based on his retaliation claim, Defendant incorporates its arguments into this cause of action. Plaintiff, likewise, incorporates his above arguments in support of his Labor Code 1102.5 retaliation claim into his Wrongful termination claim as well. Specifically, there is a genuine issue of dispute as

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**

to whether or not Plaintiff's report of the suspicious transaction was motivated HWI's decision to terminate his employment.

The proffered reason for his termination, that his position was no longer needed, is undercut by statement Mastacciuola made to Plaintiff in the days leading up to Plaintiff's termination. A reasonable juror could infer that Mastacciuola's claims that Plaintiff was needed "now more than ever" and that Plaintiff was the "point man" for the West Coast, directly contradict the purported contingency that Plaintiff's position would be eliminated if Moser was fired. Even more, HWI's stated reason of efficiency is further undercut by Mastacciuola's testimony that he needed to maintain business continuity and smoother operations as the company headed into the busy holiday season. Finally, it is notable that, at the time Plaintiff was hired, it was summertime, and Moser was also working for HWI; and still needed additional support by creating Plaintiff's position. A reasonable juror could determine that it makes no sense that Plaintiff's job was unnecessary at the start of the busiest season for HWI's industry when it had just lost its VP of US Sales. By terminating Moser, and then Plaintiff, a juror could determine that HWI was entering the Christmas season short-handed; thus, explaining Mastascciuola's comments that Plaintiff was needed now more than ever.

What the evidence does support is that, between the time when HWI purportedly decided to eliminate the position *if* Moser was fired and the day Plaintiff was terminated, Plaintiff engaged in protected activity by reporting possible illegal conduct related to a particular transaction. Thus, a reasonable juror could conclude that Plaintiff's engaging in protected activity was a motivating factor in HWI's decision to eliminate his position. Accordingly, a genuine dispute still exists and summary judgment as to Plaintiff's cause of action for wrongful termination is unwarranted.

///
///
///

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES

## 4.  CONCLUSION

Defendant fails to carry its burden on summary judgment. Plaintiff engaged in protected activity when he reported to Ghalayini, an individual with authority to investigate his claims, three different suspicions of illegal activity. Any one of these suspicions is sufficient for Plaintiff to carry his burden. Also, there is a genuine dispute as to whether Plaintiff's report of possible illegality was a contributing factor in his termination. Finally, Defendant fails to present clear and convincing evidence to support its claim that it would still have eliminated Plaintiff's position had he not reported the suspicious transaction. Accordingly, genuine disputes still exist and summary judgment of Plaintiffs causes of action for retaliation and wrongful termination must be denied.

Dated:   February 6, 2023                                     **THE FINKEL FIRM**

By: */s/ Avraham Kalaf*
JAKE D. FINKEL
AVRAHAM KALAF
EUGENE FELDMAN
Attorneys for Plaintiff, ADAM FOX

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES

# CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for Defendant Harry Winston, Inc. certifies that this brief contains 4,907 words, which complies with the word limit of L.R. 11-6.1.

Dated:   February 6, 2023                          **THE FINKEL FIRM**

By: */s/ Avraham Kalaf*
JAKE D. FINKEL
AVRAHAM KALAF
EUGENE FELDMAN
Attorneys for Plaintiff, ADAM FOX

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**